Today's cases will be called as previously announced and the times will be as allotted to council. The first case today is number 151669 United States versus Nelson Pereira. Good morning, may I reserve two minutes for rebuttal please? Yes. May it please the court. Nelson Pereira was convicted of conspiracy and aiding and abetting based on his alleged involvement in a cocaine smuggling operation. The government's case against Pereira rested on the testimony of two co-operators, Olmo and Torres, who pled guilty and testified in the hopes of getting a more lenient sentence. Pereira, who testified in his own defense, denied knowing Olmo or Torres. So the case really came down to a credibility contest. Unfortunately, that contest, the credibility contest, was rendered unfair by a combination of prosecutorial misconduct and judicial error and the appearance of bias, which tilted the playing field, skewed the jury's consideration of credibility, and rendered Pereira's trial unfair. There were really three principal manifestations of this during the trial that occurred. First, during Pereira's cross-examination by the government. Second, during Olmo's cross-examination by defense counsel. And third, during the prosecutor's closing argument. Now, while Pereira was being cross-examined by the government, he was questioned pervasively about the truthfulness of the testimony given by Olmo and Torres. The prosecutor basically went step-by-step through the testimony of Olmo and Torres and asked Pereira repeatedly, were these witnesses making this testimony up? Were they telling the truth? This is a line of questioning which was pervasive throughout the cross, which has been well settled in this circuit for at least 25 or 30 years, is grossly improper. It impinges upon the jury's exclusive determination of credibility and puts the testifying defendant into a lose-lose situation of essentially having to accuse the government's witnesses of lying, which really alters the burden of proof. Counsel, my recollection is that when that first question was asked as to why he thought he would have essentially said what he said, there was an objection based upon speculation. And then the, which was overruled. And then there was the line of questions that you are it was based upon speculation. Well, Your Honor. Not on attesting to the credibility of the witness. Well, Your Honor, there were at least six objections during this long-running cross-examination. The defense counsel said that's an improper question. The defense counsel said he's not the right person to be testifying about what was in the witness's mind. He basically, he articulated a number of bases for the objection. He did not specifically say, you cannot ask witness A about the testimony of witness B. But he all but said that. He certainly said enough to alert the judge and the prosecutor to what was wrong with this line of questioning. And indeed, just two days earlier, during defense counsel's cross-examination of Olmo, at sidebar, the very same prosecutor said to the judge, any first-year law student knows that it is improper to ask one witness about the testimony of another witness. So the prosecutor well knew this was an improper line of questioning. It pervaded his cross of Pereira, and it was unfair. And to make it worse, to compound the error, the trial judge chimed in. And the trial judge started asking the same kinds of questions of Pereira during the government's cross. Basically piling on and creating an appearance of bias. So that was the first serious problem that tilted the playing field in this case. Second, during Olmo's cross-examination, counsel for a co-defendant was attacking Olmo's credibility based on his motive to curry favor with the government. And the trial judge interjected. And the trial judge asked this leading question. Mr. Olmo, the result of this trial is not of your concern, is it? And of course, Olmo said, oh, no, Your Honor, it's not. And the judge then precluded any further inquiry by counsel along those same lines. Now, when you're talking about credibility, this is really all a defense counsel has in a case like this, is to attack the credibility of the witnesses. This was a credibility contest. And the judge, by intervening, by asking a question which might well have been asked on redirect examination by a prosecutor, but that's totally inappropriate for the judge to intervene in that manner, clearly with a leading question, which essentially shuts off that line, that critical line of questioning in a credibility contest. That was grossly improper. Was there an objection to the judge's intervention with that question? There was not an objection to that. But as this court said in the case, the 2014 case of Rivera Rodriguez, which I think bears a tremendous similarity to this case, a case which two members of this panel are certainly familiar with, this court said that the standards for showing serious prejudice, where there is an appearance of bias by the trial judge, is very much the same as the plain error standard. It is not, strictly speaking, plain error, but the standard is highly comparable. That's what the court said in a footnote, because basically you have to show on the defense side that there was an appearance of bias, and there's a reasonable likelihood that it altered the outcome of the trial. But to answer Your Honor's question, there was no objection to the court's clearly improper interjection. Now, during Olmo's cross-examination, there was another issue that occurred. While Pereira's counsel was crossing Olmo, he was seeking to attack his credibility and impeach him by showing an inconsistency between what he had testified to on the stand at trial and what he had told the probation officer during his pre-sentence interview. And the prosecutor objected, said it is improper to use a pre-sentence report for impeachment. That's what the prosecutor said. The judge agreed and told the defense counsel the PSR is off-limits. You can't use it. Basically, again, we're closing that line of inquiry. Sorry, Your Honor. That related to a peripheral point, didn't it? Well, I would say no, Your Honor, because it related to whether or not, when you're talking about credibility, I mean, it related to whether or not this witness was essentially huffing up, was pretending to exaggerate his role in the offense on the stand and minimizing it with probation. If you establish that he's basically skewing the facts based upon the audience, that very well could affect the jury's view of his credibility, which is really the key issue in the case. And the third point is during the closing argument of the prosecutor, the prosecutor referred to magic, sleight of hand, distractions, smoke and mirrors, essentially disparaging Defense Counsel and Defense Counsel's defense in the case. That is grossly inappropriate argument. And to compound the matter, when the prosecutor misstated the duration of Herrera's trip to Puerto Rico and Defense Counsel objected, the trial judge yelled at Defense Counsel in the presence of the jury, again, showing an appearance of bias and skewing the case against Mr. Herrera. I just have one additional question. The brief indicates that point in the proceeding where the judge yelled at Defense Counsel, but it doesn't really say that there were, I know that you're alleging there were other instances of interference, but it doesn't say that there were other instances of yelling. And we've said that those kinds of occasional outbursts don't amount to reversible error. Well, Your Honor, when Herrera's counsel objected, went to sidebar and objected to the court's yelling at him, he referred to multiple instances. However, looking at the written record, I can't, there's nothing in the written record which says anything else about yelling, but Defense Counsel referred to multiple instances of yelling in response to objections that Defense Counsel made during the trial. That's really the only thing in the record, other than the trial judge's acknowledgement that on this particular occasion that he did, in fact, yell at Defense Counsel. Good morning. May I please support? My name is Olga Casellon. I'm representing the United States. The defendant Nelson Pereira. Do you agree that about 10 of these questions that were asked of Herrera were improper questions asking whether Torres and Olmo had lied? The government understands that these questions were not improper in light of the testimony that Pereira volunteered while he was being cross-examined specifically in relation to some photographs that the witness had provided to the government. But do you at least concede that that question, which the judge did not sustain, was in itself, that's the question that led to all of the others, which, at least in my mind, should have been sustained. But at the time, the objection that was placed before the court was that the witness did not have specific knowledge. And for that particular reason, the judge, in the exercise of clarifying, asked the witness, do you know? And that's when the Pereira, which is the defendant, blurted out that he was probably just set up. But that had nothing to do with the questioning of Olmo. That wouldn't justify the lying questions about Olmo, would it? The Olmo's question, the Olmo, the questions that were posed. I mean, the defendant didn't open up that line of questioning as to Olmo, right? Not particular to Olmo, and the government concedes as to that particular fact. But that he was being part of a setup, and that part of the government setup, and the witnesses that testified, Olmo and Torres, masterminded this case because, basically, he denied any involvement, and knowing these two individuals. So the only explanation that he could give, but not knowing, and being he implied in the conspiracy, was that he was a setup. And consistently, throughout his testimony, and the questions posed by the prosecutor, he volunteered answers saying, it's not true, that statement is not true, by voicing his own opinion and his own conclusion that the government witnesses were lying. That's always, every time the defendant takes the stand, if he's asked, is it true you shot the guy, he's going to say no. And certainly that can't open up the door to the prosecutor just throwing our rule out the window, and start saying, so are you saying this person is lying? Are you saying he's lying about this? Are you saying, I mean, that's what happened here, this long litany of questions. It was just sort of unprofessional, and puts this issue now before us. I don't understand how that happens. Certainly the... Or how are you saying it's justified? We're not saying that it's justified. We're just saying that based on the testimony that the throughout the trial, and particularly during his direct testimony, the questioning of the government, the government avoided the use was the witness line. Basically, the government's line of questioning were more into the fact that the witness was set up as according to his testimony. But isn't that the same thing as asking him whether they were lying? Aren't the setup questions and the mated up questions the same as asking the witness if the other people were lying? Certainly, by definition, you could say that made up or making up, it will be the same conclusion that if the witness was lying, and we have to agree as to that. But particularly, the witness was not posing to that particular questioning of making a decision to say that he, that the witnesses were lying. And he was just making up the story and bringing out the fact that the defense counsel at the onset did raise the issue, but for the wrong grounds, which was that the question called for speculation. But later on, he waived the claim and there was no objection presented as to the lying question, particularly the one that is before this court, that the in light of the plain error standard of review, the defendant failed to also provide an explanation of how his rights were affected by this line of questioning in light of the rest of the evidence. We have a trial that lasted 27 days, and certainly the testimony of Torres and Olmo was not the only piece of evidence, and it was not just a credibility contest. If we put that evidence to one side, what else was there that made it highly probable that this defendant was guilty? Without the testimony of Olmo and the other witnesses, there were another six cooperators that explained the operation. Sure, but how about this defendant that implicated this fellow? And based on the evidence, and it's one that is referenced in the panel's brief, it's a piece of paper that contained the defendant's name and his phone number, the one that he had already identified as his personal phone number, the one that he had used from the year 2000 all the way to the way that he testified during 2012, and that piece of paper was obtained through a search warrant that was conducted on the main leader of the organization. But that's pretty much it, isn't it? The testimony of Torres and Olmo and the piece of paper, that was the government's case, right? And the fact that the defendant did travel on the year 2009 to bring some luggage stacks based on the testimony of Olmo and actually with Olmo to testify that in trial. So we have to agree that the piece of paper was crucial and also the fact that it contained the defendant's number and the seizure. But the piece of paper wouldn't have been enough to convict, right? We will have to make the inference that based on a piece of paper that the jury's decision would have been different and that for the government, we understand that the rest of the evidence through lies the fact that this organization was concealing drugs in suitcases and they were traveling to different places in the northern seaboard of the United States. And that Pereira being a participant and being an employee and being related to Franklin Bratz who was the person in charge of getting all these drugs at the destination point could have actually have the jurors to understand that he had a participation as well in the drug conspiracy. What do you mean related? You mean he was a family member? I'm sorry? What do you mean related? Was he a family member? It related that they were co-workers and they also at some point he related that they were friends and that he would take him also to treatments and that he would engage also in activities with Franklin Bratz. Not only that he was a co-worker, at the beginning of his testimony he just tried to limit his participation or his knowledge of Franklin Bratz as a co-worker, but later on throughout the cross-examination it turned out that he did know where Franklin Bratz worked and where he lived and that they engaged in a more personal relation than the one that he tried to portray at the beginning. So the defendant's relation with Franklin Bratz was crucial. I'm sorry, is this the person that you're referring to now, is this where the piece of paper was found? No, Wilfredo Rodriguez Rosado, he was the leader of the organization that was running the operation here in Puerto Rico. According to the evidence presented at trial... Where was the piece of paper found that had his name and number on it? Wilfredo Rodriguez Rosado's residence in Morovis, Puerto Rico. When a search warrant was executed he had the handwritten number, the name of Nelson Pereira and the number. His personal phone number. And it's making reference because it was a piece of stationery that belonged to the person that was identified as the leader in Newark, specifically as the person that he was in charge of the operation of receiving the drugs at the airport in Newark. So the relationship between these two participants and the fact that the defendant's name and personal phone number that was identified throughout the trial by Du Bois, not only by the defendant but by other witnesses, connects the defendant with these two participants in the conspiracy. Could you help me understand the objection to the pre-sentence report's use? I'm sorry? Help me understand the government's objection to the pre-sentence report's use to increase credibility. The government objected to the line of questioning in relation to the form because the witness, the witness had been testifying in relation to the trips that he had taken and all his participation. The objection was to the form of the questioning that the attorney presented in asking the witness if he had explained to the probation officer and he did not basically provide it specifically the inconsistence, which now it's the allegation that the testimony that he or that what he explained to the probation officer was in fact inconsistent with the testimony of the witness during trial. So I thought the court said that it was improper to use the pre-sentence report in that manner. I don't understand why the court wouldn't allow the use of the pre-sentence report in the manner the defendant wanted to use it. I think that the court did allow the use throughout the trial of and there was a defendant that in fact had a probation officer to testify in relation to the information that she received from a cooperator and in this particular case the defendant did not pursue the matter of actually or bringing the probation officer or laying out the specific grounds. I'm trying to figure out what was wrong with the way the defendant wanted to use the pre-sentence report. I mean, the court treated the pre-sentence report itself as if it was somehow sacrosanct. I couldn't figure that one out. Why isn't it valid to use a pre-sentence report to impeach someone's credibility? Are you saying it's just the defense counsel formulated the question incorrectly? The question was formulated improperly and the way that the information that he wanted to elicit from the witness was not inconsistent with the pre-sentence report. And making that particular reference in specific to what he had told to the probation officer would have been an inadmissible hearsay. Because it would be the reflection of what the probation officer understood that he was trying to use it not for substantive evidence but to impeach his credibility. But that was not what the defendant at the time presented as the reason why he wanted to do the pre-sentence report. He just stated that he wanted to bring the fact that he had traveled 10 to 12 times and that was inconsistent with his testimony. But he did not present the objection with the grounds that now he's raising an appeal that he wanted to have that information in for the jury to consider based on the fact that he was impeaching the witness. Thank you. Your Honors, it is really mind-boggling to me that the government is still trying to defend this pervasive, deliberate, clearly improper line of questioning. 25 years after Akatoi, 20 years after Sullivan, they're still trying to defend this. And it's particularly troubling and I think it should trouble the court that, again, two days earlier during the defendant's cross, co-defendant's cross of Ulmo, the same prosecutor who went through this pervasive, deliberate line of questioning, which the court has correctly described, said, and I quote, any first-year law student knows you cannot ask a witness who is testifying about the testimony of another witness. It's an impermissible question. They knew that they couldn't do this, but they did it anyway. I mean, there are rules that have to be followed at a trial and this deliberate, gross violation of the rules really should not be counted as. Could you focus on the prejudice point because I think that's because here you've got a case where it's obvious to everyone who's listening that one or the other is lying because it's not one of those things that slide by each other in the night. This is directly conflicting testimony between the cooperating witnesses and the defendant. So given that, how does making it express what is obvious to everyone in the room actually cause prejudice? Well, the prejudice is it forces the defendant to basically, the defendant himself, to accuse the witnesses of being liars. It essentially shifts the burden of proof really on the defendant to prove that those people are lying. That's not the burden of proof. If the jury had a reasonable doubt, they would acquit. That's one of the reasons why this court and others have said you can't question a defendant in this manner. It's improper. And to compound the prejudice, the judge piled on. The judge asked the same kinds of questions, therefore clearly communicating to the jury that he was on the prosecution's side. Before you sit down, could you just briefly address the, because the government's position is that there was other evidence in a 27-day trial that would have been more than enough to support the conviction? Your Honor, clearly there was no other evidence. The only evidence, there were lots of other cooperators. None of them testified at all about Pereira. There were two people who testified about Pereira, Olmo and Torres. They had a piece of paper. The piece of paper, which is in the appendix, is a list of phone numbers and names. None of the other phone numbers and names are at all related to this conspiracy, allegedly. There was no evidence that that phone number was ever used by anybody in the course of this conspiracy. That piece of paper by itself could not have convicted anyone. And there was no other evidence other than Olmo and Torres. And in a credibility contest, the prejudice is clear and the court should reverse. Thank you.